1   Patrick R. Costello
2   Ann H. Petalas
    Securities and Exchange Commission
3   100 F Street N.E.
    Washington, DC 20549-5985
4   Email:  costellop@sec.gov
            petalasa@sec.gov
5   Florida Bar No. 75034 (Costello)
6   Texas Bar No. 24012852 (Petalas)
    Telephone: (202) 551-3982
7   Facsimile: (202) 772-9245

8   Attorneys for Plaintiff

9

10                  IN THE UNITED STATES DISTRICT COURT

11                      FOR THE DISTRICT OF ARIZONA

12

13   Securities and Exchange Commission,

14                                              No. CV-17-00427-PHX-SPL
                        Plaintiff,
15                                              **PLAINTIFF'S REPLY**
16   vs.                                        **MEMORANDUM IN SUPPORT OF**
                                                **ITS MOTION FOR PARTIAL**
17   Luke C. Zouvas, et al.,                    **SUMMARY JUDGMENT AS TO**
                                                **DEFENDANT LUKE C. ZOUVAS**
18                      Defendants.
                                                Oral Argument Requested
19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

3

I.      INTRODUCTION…………………………………………………….…1

4

II.     ARGUMENT……………………………………….……………………... 1

5

        A.      Zouvas Failed to Comply with the Local Rules………......……..…………1

6

        B.      Zouvas' Objections Should be Overruled………..…………………………2

7

8

        C.      Zouvas Has Not Proffered Any Evidence to Show a Genuine
                Dispute that He Acted Negligently…………………………..…….……….. 4

9

10

                1.      Zouvas' Burden on Summary Judgment……………..………...5

11

                2.      The SEC's Uncontroverted Evidence Shows Zouvas
                        was Negligent at a Minimum in this Case……………………... 5

12

13

        D.      Zouvas Contradicts his Own Prior Testimony…………………………... 10

14

III.    CONCLUSION…………………………………..…………………….…. 11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u> <u>**Page**</u>

3

*B2B CFO Partners LLC v. Kaufman*

4
        856 F. Supp. 2d 1084 (D. Ariz. 2012)…………………………………………11

5

*Carson v. Depuy Spine, Inc.*

6
        365 F. App'x 812 (9th Cir. 2010)……………………………………………3, 4

7

*Christensen v. Georgia-Pacific Corp.*

8
        279 F.3d 807 (9th Cir. 2002)…………………………………………………..9

9

*FDIC v. O'Melveny & Myers*
        969 F.2d 744 (9th Cir. 1992), *rev'd on other grounds,*

10
        512 U.S. 79 (1994)………………………………………………………….. 7

11

*FTC v. Publ'g Clearing House, Inc.*

12
        104 F.3d 1168 (9th Cir. 1997)………………………………………………8

13

*Flying Diamond Corp. v. Pennaluna & Co.*

14
        586 F.2d 707 (9th Cir. 1978)………………………………………………...10

15

*Gallant v. US*

16
        392 F. Supp. 2d 1077 (D. Alaska 2005)……………………………………4

17

*Keenan v. Allan*

18
        91 F.3d 1275 (9th Cir. 1996)……………………………………………… 5

19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*

20
        475 U.S. 574 (1986)………………………………………………………… 5

21

*McDevitt v. Guenther*

22
        522 F. Supp. 2d 1272 (D. Haw. 2007)…………………………………… 4

23

*Morganroth & Morganroth v. DeLorean*
        213 F.3d 1301 (10th Cir. 2000), *overruled on other*

24
        *grounds*, 661 F.3d 495 (10th Cir. 2011)…………………………………..4

25

*Primiano v. Cook*, No. 06-15563

26
        2010 U.S. App. LEXIS 8859 (9th Cir. Apr. 27, 2010)…………………4

27

*Robinson v. Adams*

28
        847 F.2d 1315 (9th Cir. 1987)…………………………………………3, 4

*SEC v. Frank*
    388 F.2d 486 (2d Cir. 1968)…………………………………………… 7

*SEC v. Greenstone Holdings, Inc.*, No. 10-1302
    2012 U.S. Dist. LEXIS 44192 (S.D.N.Y. Mar. 28, 2012)……………...7

*SEC. v. Hughes Cap. Corp.*
    124 F.3d 449 (3d Cir. 1997)…………………………………………… 5

*SEC v. Janus Spectrum LLC*, No. 15-609
    2017 U.S. Dist. LEXIS 126231 (D. Ariz. Aug. 8, 2017)……………… 5

*SEC v. Todd*
    642 F.3d 1207 (9th Cir. 2011)…………………………………………4

*Slaughter v. S. Talc. Co.*
    919 F.2d 304 (5th Cir. 1990)…………………………………………...4

*Strong Coll. Students Moving v. Coll. Hunks Hauling Junk*, No. 12-1156
    2015 U.S. Dist. LEXIS 191833 (D. Ariz. May 15, 2015)…….………..1

*US v. Knight*
    25 F. Supp. 3d 1104 (W.D. Ark. 2014)………………………………...8

*Villiarimo v. Aloha Island Air, Inc.*
    281 F.3d 1054 (9th Cir. 2002)…………………………………………8

*W. Alliance Bank v. Jefferson*, No. 14-0761
    2015 U.S. Dist. LEXIS 136949 (D. Ariz. Oct. 7, 2015)……………… 1

*Weiss v. SEC*
    468 F.3d 849 (D.C. Cir. 2006)………………………………………… 7

**Statutes and Rules**          **Page**

Securities Act Section 17(a)(3)
    15 U.S.C. § 77q(a)(3)………………………………………… 4, 10

Fed. R. Civ. P. 36(a)(3)……………………………………………… 7

D. Ariz. LRCiv 7.2(d)…………………..………………………...1

D. Ariz. LRCiv 7.2(m)(2)………………………………………...1

D. Ariz. LRCiv 56.1(b)……………………………………………....1

1    Plaintiff Securities and Exchange Commission files this reply memorandum
2    pursuant to LRCiv 7.2(d) and this Court's Order of January 22, 2019 (Doc. 176) in further
3    support of its Motion for Partial Summary Judgment (Doc. 145) (the "SEC's Motion"). The
4    SEC responds to the arguments raised by Defendant Luke C. Zouvas ("Zouvas") in his
5    opposition to the SEC's Motion (Doc. 179) (the "Opposition") and in his Controverting
6    Statement of Facts (Doc. 180) ("CSOF").[1]

7    **I.      INTRODUCTION**

8    As described further below, Zouvas has not met his burden to refute summary
9    judgment in the SEC's favor.  In fact, he repeats many of the same self-serving arguments
10   raised by the co-defendants in their respective oppositions, and relies on evidence that
11   directly contradicts his sworn deposition testimony.  He also misstates the applicable law in
12   several material respects. Candidly, he has done nothing to raise a genuine dispute that
13   would show he did not act negligently in this case with respect to Crown Dynamics Corp.
14   ("Crown").  Accordingly, the SEC's Motion should be granted.

15   **II.     ARGUMENT**

16            **A.      Zouvas Failed to Comply with the Local Rules**

17   Much like the co-defendants Larson, Jorgenson and Schiprett, Zouvas too has
18   ignored the express prohibition in LRCiv 7.2(m)(2) and made substantive objections with
19   argument directly in the CSOF instead of stating the objections "summarily" and reserving
20   argument for his Opposition. *See* CSOF Nos. 3-4, 19-20, 38-39, 41, 50, 63, 132.
21   Accordingly, these portions of the CSOF should be stricken outright. *Strong Coll. Students*
22   *Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*, No. 12-1156, 2015 U.S. Dist.
23   LEXIS 191833, at *4 (D. Ariz. May 15, 2015); *W. Alliance Bank v. Jefferson*, No. 14-
24   0761, 2015 U.S. Dist. LEXIS 136949, at *3-4 (D. Ariz. Oct. 7, 2015).

25   Zouvas also did not comply with LRCiv 56.1(b).  In CSOF Nos. 23-25, 29-30, 43,
26   52-57, 59-60, 64, 67-75, 77-88, 90-94, 97-100, 103-12, 128, 130-31, he claims that he

27   _____

28   [1] With the filing of this reply, briefing on summary judgment in this matter is now
     complete as to all parties.

1  "does not have direct personal knowledge regarding this statement and thus disputes it."

2  The Local Rule, however, requires the responding party either to admit or dispute the fact,

3  and if disputed, to cite supporting materials in the record.  Because Zouvas failed to do

4  that, the Court should deem those facts admitted.

5            **B.**       **Zouvas' Objections Should be Overruled**

6          Even if Zouvas had properly complied with the Local Rules, the objections he has

7  raised should be overruled.  First, in CSOF Nos. 5 and 11, Zouvas cites portions of the

8  deposition of one of the SEC's experts, James Cangiano, for the proposition that Zouvas'

9  reliance on the SEC's declaration of effectiveness of Crown's Form S-1 registration

10 statement was appropriate because such a declaration means the SEC approved the

11 accuracy of the information in the Form S-1.  Not surprisingly, Zouvas has taken Mr.

12 Cangiano's testimony out of context.  In his Second Declaration, Mr. Cangiano has

13 clarified his testimony (even though no clarification was necessary) and notes the accuracy

14 of the contents of a Form S-1 and supporting materials remains with a registrant (like

15 Crown) and not with the SEC.  *See* Second Declaration of Patrick R. Costello filed

16 contemporaneously herewith ("Costello Dec."), at Ex. 1.  This is consistent with Mr.

17 Cangiano's testimony later in the deposition where he compared the role of FINRA in its

18 review of a Rule 15c2-11 application with the SEC's review of a Form S-1: "[T]he criteria

19 is that they must be up-to-date in their financial reporting.  I don't believe [FINRA] go[es]

20 into the accuracy or the quality or the analysis of the financials, just that they're current in

21 their filings."  *See* Doc.164-3, at 71:10-24.

22         In choosing to misinterpret Mr. Cangiano's testimony, Zouvas also conveniently

23 ignores the report of the SEC's other expert, Robert Robbins (a securities attorney with

24 over 40 years of experience who currently serves as the global head of the corporate

25 practice at Pillsbury Winthrop) who opined specifically that:

26         Zouvas was not entitled to rely on the fact that the [SEC] had declared the
        Crown S-1 effective, as evidence that the statements of fact contained in the

27         S-1 were correct.  It is an elementary principle of securities law that SEC
        review provides no assurance of the accuracy of the contents of a filed

28         document.  An attorney of Zouvas' experience would know this, but in any

1
2
3
4

> case the Crown S-1 expressly said so on the front cover: "NEITHER THE
> SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE
> SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED OF
> THESE SECURITIES OR DETERMINED IF THIS PROSPECTUS IS
> TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE
> CONTRARY IS A CRIMINAL OFFENSE."

5
6
7

*See* Doc. 148-8, at 7.  As noted in Section II.C below, the fact that Zouvas blindly relied on Crown's Form S-1 (and continues even today to maintain the propriety of doing that) is proof he was negligent at a minimum in reviewing the Crown transaction.

8
9
10
11
12
13
14
15

Second, concerning Mr. Robbins' report in particular,[2] Zouvas raises baseless objections to the portions of the report on which the SEC has relied on summary judgment. *See* CSOF Nos. 19-20, 38-39, 41, 50, 63.  Those portions address the due diligence obligations that Zouvas had as the securities attorney involved with Crown.  Zouvas claims in each of these instances that (i) "there is no evidence [he] was obligated to take any such steps to comply with the federal securities laws," and (ii) "Zouvas disputes the credibility of the expert witness report and resolution of such a dispute is inappropriate for summary judgment." *See id.*

16
17
18
19
20
21
22
23
24
25
26
27

Contrary to these contentions, there most certainly is evidence that Zouvas had those obligations – the evidence is Mr. Robbins' expert testimony.  The Ninth Circuit has held a party cannot "simply question the credibility" of an expert witness in order to defeat a motion for summary judgment.  *Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 814 (9th Cir. 2010).  Instead, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987).  Where the opposing party proffers no expert of his own or any competent evidence to establish what the proper standard of care is, and instead merely challenges the credibility of the moving party's expert without evidence to place the expert's credibility in doubt, the same is "merely colorable" and not significantly probative to defeat summary judgment. *Id.* at 1317.

28

---

[2] Mr. Robbins' full report is in the record as Doc. 148-8.

Here, Zouvas has not set forth any evidence, or even articulated a reason, to place Mr. Robbins' credibility in doubt.  He could have elected to depose Mr. Robbins and cross-examine him on the information or methodology in his report, but he chose not to do that.  Attempting to punt that examination until trial is insufficient as a matter of law because "[n]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *Id.*  In addition, Zouvas has not proffered any competent evidence to show a competing standard of care to explain the actions he took as a securities attorney in the Crown transaction.  He failed to designate any experts of his own (or even seek to qualify himself as an expert) and has not pointed to any law that would establish such a competing standard.

As a result, Mr. Robbins's testimony on that front is uncontroverted and should be accepted by the Court.  *See Carson*, 365 F. App'x at 814 (affirming summary judgment where opposing party failed to dispute the moving party's expert or otherwise introduce evidence of the applicable standard); *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1312 (10th Cir. 2000) (same); *see also Gallant v. US*, 392 F. Supp. 2d 1077, 1081 (D. Alaska 2005) (granting summary judgment to the government because plaintiff "submitted no expert report and so created no issues of material fact.").[3]

## C.   Zouvas Has Not Proffered Any Evidence to Show a Genuine Dispute that He Acted Negligently

The SEC's Motion is based on Section 17(a)(3) of the Securities Act.  To prevail, the SEC must show that Zouvas negligently engaged in fraudulent or deceitful transactions, practices or courses of business with respect to Crown.  Negligence in this context is

---

[3] The cases Zouvas cites in the Opposition on this issue are off topic. Neither *SEC v. Todd*, 642 F.3d 1207 (9th Cir. 2011), nor *Primiano v. Cook*, No. 06-15563, 2010 U.S. App. LEXIS 8859 (9th Cir. Apr. 27, 2010), was a summary judgment case.  Instead, *Todd* involved a post-trial motion for judgment as a matter of law where, unlike here, both parties had proffered competing expert testimony at trial for the jury's consideration. *Primiano* was an appeal of the trial court's exclusion of an expert on *Daubert* grounds. Zouvas also cites *McDevitt v. Guenther*, 522 F. Supp. 2d 1272 (D. Haw. 2007), but that case actually involved a pre-trial motion to strike the expert.  And *Slaughter v. S. Talc. Co.*, 919 F.2d 304 (5th Cir. 1990) affirmed the district court's grant of summary judgment against a party who relied on an expert because, unlike here, the expert's opinion was not properly supported by the facts and amounted to a bare conclusion.  Notably, Zouvas has not moved to strike Mr. Robbins' report nor has he presented a *Daubert* challenge.

1  measured by reasonable prudence, which looks objectively at Zouvas' actions in light of

2  what a reasonable person would do under like circumstances. *See SEC v. Hughes Cap.*

3  *Corp.*, 124 F.3d 449, 454 (3d Cir. 1997); *SEC v. Janus Spectrum LLC*, No. 15-609, 2017

4  U.S. Dist. LEXIS 126231, at *24 (D. Ariz. Aug. 8, 2017).

5           **1.      Zouvas' Burden on Summary Judgment**

6           Zouvas has done nothing in his Opposition to refute the SEC's claims on summary

7  judgment.  Not only has he failed to challenge Mr. Robbins' qualifications or the substance

8  of the expert report, but he also has not introduced any competing evidence of the standard

9  of care applicable to a securities attorney in like circumstances or otherwise demonstrated

10 how he complied with his due diligence obligations in connection with Crown.  It is not

11 enough for him simply to say that competing inferences or questions of fact may be drawn

12 from the evidence.  Instead, on summary judgment, the issue of fact must be "genuine."

13 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  That means

14 as the party opposing summary judgment, Zouvas must do more than simply show there is

15 "some metaphysical doubt as to the material facts." *Id*.  Instead, he must identify "with

16 reasonable particularity the evidence that precludes summary judgment" because the duty

17 of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan*

18 *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  As noted further below, Zouvas has not

19 identified any factual dispute that would merit sending this case to the trier of fact.

20         **2.      The SEC's Uncontroverted Evidence Shows Zouvas was**
21                  **Negligent at a Minimum in this Case**

22         Mr. Robbins opines in his report that Zouvas failed to exercise the required duty of

23 reasonable care as the securities attorney responsible for vetting the Crown transaction.

24 Among other things, Zouvas was confronted with numerous red flags that should have

25 prompted further inquiry on his part, rather than blindly taking Zwebner at his word and

26 assuming the subscribers were in fact bona fide investors in Crown.  *See* Doc. 148-8, at 6.

27         In his Opposition, Zouvas notes that his review of the transaction consisted of

28 looking at Crown's Form S-1 and periodic filings as well as a variety of other materials

that Zwebner brought him in a suitcase, which he contends were subscription agreements, copies of cancelled checks from the subscribers, stock certificates and powers, foreign bank signature guarantees, and the subscribers' passports and identification cards.[4]  He then claims in CSOF No. 17 that it was "reasonable to conclude, based on the plethora of authentic information in front of him, that Zwebner represented the original subscribers and that Crown as a company was above board."

The SEC is not disputing Zouvas' contention that he reviewed this information. The point here is not whether Zouvas reviewed it, but that a review of the information, standing alone, is insufficient for a reasonably prudent securities attorney in like circumstances to discharge his due diligence obligations.[5]  Mr. Robbins opines that Zouvas was not justified in taking Zwebner at his word that he represented the interests of the Israeli subscribers, given that he and Zwebner had no prior course of dealing together.  *See* Doc. 148-8, at 7.  In addition, Zouvas should have done more to confirm the subscribers were in fact bona fide investors, such as contacting them directly to verify Zwebner's representations and the authenticity of the documents.  *Id.*  Had he done that, he would have learned that none of these individuals was a legitimate investor, as they each testified emphatically that they have never even heard of Crown.  *See* Doc. 149-1, 149-2, 149-3.  And yet, Zouvas continues to this day to ignore this testimony and just point in the CSOF to the various subscription agreements bearing the subscribers' names as support for his argument the transactions were legitimate.  Notably, as with the other defendants, Zouvas

---

[4] Despite his claim in the Opposition that he reviewed the "original" passports and identification cards, Zouvas actually testified at his deposition that he reviewed ***copies*** of those documents.  *See* Doc. 154-8, at 48:9-14.  On a related topic, Samson Gelles (one of the subscribers) testified separately at his deposition that in Israel, it is actually quite easy for someone to obtain a copy of another's passport or identification card, considering that most institutions and businesses have electronic images of both credentials readily on hand for security purposes.  *See* Costello Dec., at Ex. 2 (Gelles Tr., at 49:9-11).

[5] With respect to the bank signature guarantees in particular, Mr. Robbins has opined that it was not sufficient for Zouvas to rely on them because Zouvas knew nothing about the banks themselves, and thus was not in a position to verify whether the banks even were qualified to guarantee the signatures as required by the stock certificates, and he also was unfamiliar with international banking regulations and only assumed what the guarantees represented.  *See* Doc. 148-8, at 7.  Zouvas has done nothing in his Opposition to challenge Mr. Robbins' assessment.

1   too chose not to depose the subscribers to challenge their testimony, which therefore stands

2   uncontroverted.[6]  Moreover, Zouvas never bothered to respond to the SEC's First Request

3   for Admission ("RTA") wherein he was asked to admit that he did not conduct any due

4   diligence to determine whether the subscribers were legitimate, and that he knew at the

5   time of the Crown transaction that the subscribers' investment was a sham.  *See* Costello

6   Dec., at ¶ 5, and Ex. 3, Nos. 8-14.  Because he failed to answer the requests, they are

7   deemed admitted as a matter of law.  *See* Fed. R. Civ. P. 36(a)(3).

8       Mr. Robbins states further that "[i]t is not sufficient for an attorney to rely solely on

9   a client's representations about the facts that form the basis for the opinion."  Doc. 148-8,

10  at 6.  This is consistent with the Ninth Circuit's view.  In *FDIC v. O'Melveny & Myers*,

11  969 F.2d 744, 749 (9th Cir. 1992), the court held that "[a]ttorneys, in rendering opinions

12  relating to the securities laws, are not justified in assuming facts as represented to them by

13  the client and in basing their opinion on the assumption that such facts are correct.  Rather

14  the attorney must make a reasonable effort to independently verify the facts on which the

15  opinion is based."  *See also SEC v. Frank*, 388 F.2d 486, 489 (2d Cir. 1968) ("[A] lawyer,

16  no more than others, can escape liability for fraud by closing his eyes to what he saw and

17  could readily understand."); *Weiss v. SEC*, 468 F.3d 849, 855 (D.C. Cir. 2006) (holding

18  that an attorney's opinion must be preceded by "a reasonable investigation into the facts

19  underlying the opinion"); *SEC v. Greenstone Holdings, Inc.*, No. 10-1302, 2012 U.S. Dist.

20  LEXIS 44192, at *22 (S.D.N.Y. Mar. 28, 2012) (attorney's "avoidance of the true facts [is]

21  reckless at best").

22      Zouvas also claims in his Opposition that he cannot be held accountable for not

23  concluding that Zwebner was a criminal.  This argument completely misses the mark and

24  ignores the entire point of the SEC's Motion.  The question here is not what Zouvas

---

26  [6] This includes Crown's two purported initial officers, Amir Rehavi and Chanah Zehavi.  It
27  is mind-boggling that Zouvas would contend on summary judgment with respect to Rehavi
    and Zehavi in particular (*see* CSOF 18) that they legitimately sold their Crown shares to
28  Aninye, when it was Zouvas who directed the transfer agent to retire Rehavi's and Zehavi's
    shares to Crown's treasury rather than issue them to Aninye.  *See* Doc. 154-8, at 165:23-
    25; 167:18-21.

himself believed or what he did, but what a reasonably prudent attorney in like circumstances would have done.[7] And Mr. Robbins analyzes that issue at length in his report, and has observed that Zouvas did not act reasonably in vetting Crown. As noted above, Zouvas has not proffered any evidence to dispute the standard of care or otherwise show that his actions were justified. Instead, he just relies on self-serving testimony that it was "reasonable to conclude" that Crown was in order. The same, however, is insufficient to defeat summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

The same holds true for Zouvas' failure to verify that the funds he wired to Zwebner were dispersed to the subscribers. Putting aside the fact that the subscribers never were bona fide investors to begin with, all Zouvas claims on summary judgment is that he "reasonably believes, but does not know for sure, that Zwebner forwarded the proceeds to the sellers." *See* CSOF No. 47. This self-serving testimony is insufficient to overcome Mr. Robbin's expert opinion that Zouvas could not rely solely on Zwebner about the disbursement of funds or the bank accounts where Zouvas was directed to send the wire. Instead, Zouvas should have made inquiry about the accounts to satisfy himself as to the substance of the transaction, and also should have taken other steps to confirm receipt of the disbursements, such as contacting the subscribers directly. *See* Doc. 148-8, at 7, 10.

And Mr. Robbins reaches a similar conclusion with respect to Shira Mizrahi (the subscriber from whom Zouvas supposedly purchased his own Crown shares and whom he considered to be a purported client). Zouvas freely admits on summary judgment that he

---

[7] Zouvas' citation to *US v. Knight*, 25 F. Supp. 3d 1104 (W.D. Ark. 2014) for this principle is inapposite. There, the defendant-attorney was being charged with assisting his client in committing bankruptcy fraud, which is a specific intent crime. Here, however, the issue is negligence and whether Zouvas should have done more to confirm the representations Zwebner made to him.

1   never communicated with Ms. Mizrahi (*see* CSOF 49), but then attempts to legitimize the
2   transaction with her by again pointing to the share purchase agreement bearing her name.
3   As noted above, the subscribers, including Ms. Mizrahi, have testified emphatically that
4   they never were bona fide investors in Crown.  Had Zouvas acted like a reasonably prudent
5   securities attorney in his due diligence review and contacted the subscribers as Mr.
6   Robbins has opined a prudent attorney would have done, then Zouvas would have learned
7   that his own personal transaction with Ms. Mizrahi was a sham. Given that he supposedly
8   was purchasing shares from a client, a phone call to verify some information would most
9   definitely have been appropriate, as Mr. Robbins has noted the whole transaction between
10  Zouvas and Ms. Mizrahi was a red flag and a conflict of interest deserving of further
11  inquiry and disclosure.  *See* Doc. 148-8, at 8-9.

12          In sum, it was Zouvas' negligence at the outset that substantially assisted the other
13  defendants in this case because had Zouvas not turned his back on his due diligence
14  obligations, the truth about the illegitimacy of Crown would have come to light, and the
15  other defendants would not have been able to make use of Crown in their eventual market
16  manipulation.  It was not sufficient for Zouvas, as a securities attorney, to rely solely on
17  assurances from Zwebner without further inquiry.  Instead, Zouvas was negligent at best,
18  and this substantially enabled the other defendants to acquire Crown shares and eventually
19  dump them into the market at enormous profits.

20          Zouvas failed to discharge his duties in this case at the level expected of a securities
21  attorney in like circumstances.  He has not proffered any testimony concerning a
22  competing standard of care,[8] and has not introduced any evidence to challenge Mr.
23  Robbins' report or any reason to doubt Mr. Robbins' opinions.  While it is true as a general
24  matter, as Zouvas notes in the Opposition, that negligence usually is a matter for the trier of
25  fact, the Ninth Circuit has held nevertheless that "summary judgment is proper where the
26  facts are undisputed and only one conclusion may reasonably be drawn from them.

27
28  [8] Zouvas' citation to *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807 (9th Cir. 2002) is
    off-point because there, the party opposing summary judgment actually did introduce
    competing evidence as to the standard of care.

1   Negligence then becomes a matter of law." *Flying Diamond Corp. v. Pennaluna & Co.*,

2   586 F.2d 707, 713 (9th Cir. 1978).

3         Here, the only conclusion to be drawn is that Zouvas was negligent at a minimum

4   and violated Section 17(a)(3) of the Securities Act.  Accordingly, the Court should grant

5   summary judgment in favor of the SEC.  And furthermore, the Court also should enter

6   injunctive relief and disgorgement plus prejudgment interest against Zouvas, as he failed to

7   offer any evidence (or even any argument at all in his Opposition) as to the propriety of

8   those remedies or the SEC's calculation of monetary relief.  The same holds true for

9   Zouvas' claimed "advice of client" affirmative defense, to which he offers no argument or

10  opposition against the SEC's request for summary judgment.  *See* Doc. 145, at § III.D.

11        **D.**    **Zouvas Contradicts his Own Prior Testimony**

12        As with the other defendants, Zouvas too has directly contradicted his own prior

13  testimony.  First, he now claims that a "subsequent investigation" revealed that the $25,000

14  wire he received from Larson on December 15, 2011 was for the purchase of Jorgenson's

15  and Schiprett's Crown shares, and that he remitted those funds to Zwebner.  *See* CSOF

16  Nos. 35 and 121.  At his deposition, however, he testified specifically that he did not know

17  the purpose of that $25,000 wire.  *See* Doc. 154-8, at 118:1-8.  He offers no indication

18  about what the supposed "subsequent investigation" involved, other than perhaps to make

19  his story on summary judgment consistent with Larson's, who similarly backtracked on his

20  own deposition testimony about the wire.  *See* Doc. 171, at 6.

21        Moreover, the story contradicts the evidence from a timeline perspective.  Indeed,

22  the wire came into Zouvas' trust account ***after*** he already had sent the funds for the Crown

23  acquisition to Zwebner.  *See* Doc. 154-8, at 111:8-24 (Zouvas noted he last sent funds to

24  Zwebner on December 14, 2011).  And the story also is inconsistent with the SEC's RTAs,

25  in which Zouvas is deemed to have admitted (i) he did not remit any additional funds to

26  Zwebner pertaining to Crown; and (ii) because of that, Jorgenson, Schiprett and the rest of

27  Larson's and Robb's investor group to whom the free-trading shares were allocated never

28  paid for those shares.  *See* Costello Dec., at Ex. 3, Nos. 5-6.  Accordingly, the Court should

strike Zouvas' contradictory statements as a sham. *See B2B CFO Partners LLC v. Kaufman*, 856 F. Supp. 2d 1084, 1088 (D. Ariz. 2012) (holding it is appropriate to strike evidence that contradicts prior deposition testimony).

And second, Zouvas now claims on summary judgment that Jorgenson, Schiprett and the rest of the investor group were not "Larson's and Robb's investors" but merely people they introduced to the deal, and that when it came to allocating the Crown shares to the group, Zouvas never took direction from Larson or Robb.  *See* CSOF No. 44. This contradicts not only what Zouvas said at his deposition, but also what he specifically represented to the State Bar of California in their investigation relating to Crown:

> Q.    So does that refresh your recollection as to whether Mr. Larson and Mr. Robb in fact gave you directions to transfer the shares?
>
> A.    Yes.  And, you know, when I say that, like, transfer, the information is what I was – you know, I would direct because I'm authorized. I would get the information from them. That's what I mean when I say that.

*See* Doc. 154-8, at 89:13-20. Zouvas told the California Bar that Crown shares were "transferred to investors of Chris Larson and Cameron Robb." *Id.* at 89:7-9.  He further described these individuals as investors Robb and Larson "were bringing into the company." *Id.* at 86:13-19.   The Court therefore should strike the contradictory statements on summary judgment.  *See B2B*, 856 F. Supp. 2d at 1088.

## III.    **CONCLUSION**

For the reasons set forth above and in the SEC's Motion, the SEC respectfully requests the Court grant summary judgment in its favor.

DATED: March 4, 2019                              Respectfully submitted,

                                                  SECURITIES AND EXCHANGE
                                                  COMMISSION

                                                  By:    /s/ Patrick R. Costello
                                                         _____
                                                         Patrick R. Costello
                                                         Ann H. Petalas

                                                  Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on March 4, 2019, I caused to be served the foregoing PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT LUKE C. ZOUVAS either by (i) using the CM/ECF system, which will send notification of such filing to counsel for Defendants at the following addresses; or (ii) sending via electronic mail to those counsel not yet registered on the CM/ECF system at the following addresses:

| | |
|---|---|
| Alan S. Baskin | Roger L. Scott |
| Baskin Richards PLC | Greenberg Traurig, LLP |
| 2901 N. Central Ave., Ste. 1150 | 3161 Michelson Drive, Ste. 1000 |
| Phoenix, AZ 85012 | Irvine, CA 92612 |
| alan@baskinrichards.com | scottro@gtlaw.com |
| | |
| Jason M. Hopkins | Anthony B. Bingham |
| Jason S. Lewis | Bingham Law |
| DLA Piper LLP | 1423 South Higley Road |
| 1717 Main Street, Ste. 4600 | Building 4, Suite 110 |
| Dallas, TX 75201 | Mesa, AZ 85206 |
| jason.hopkins@dlapiper.com | tony@binghamlawaz.com |
| jason.lewis@dlapiper.com | |

/s/ Patrick R. Costello
Patrick R. Costello